Case No. 13-4145, 14-3816, and 15-3462, Kerry Braun v. Ultimate Jetcharters Inc. et al. Oral argument not to exceed 15 minutes per side. Mr. Freeman for the Appellant Cross-Appley. Your Honors, may it please the Court, my name is Sid Freeman. I have the honor today of representing the appellant in this case, Ultimate Jetcharters LLC. With me today at counsel table is my legal associate, Attorney Robert McNamara, and opposing me today for the Appley Cross-Appellant is Mr. Donald Leroy. Your Honors, may it please the Court, I would ask to have five minutes taken from my time for rebuttal. So I wish to have ten minutes for my initial comments. Your Honors, may it please the Court, this is actually a pretty important case. It's the reason why I ask to have it argued. It's important on a number of different causes, and I'll deal with each of them in turn, three of them in particular. First one has to deal with whether or not this issue should have gone to the jury, whether the Court should have taken the case from the jury, and the consequences that attend to the fact that the Court did not. The second issue has to do with the Court's denial of remittitor for the issue of issues, two issues, of punitive damages and attorney's fees. The third issue has to do with whether or not Ultimate Jetcharters LLC should have been named as the Your Honors, may it please the Court, I'll address the first one. The reason why this is so important, and I don't quite know how to do this. I've never done anything like this before. I cited in our brief, in our initial appellant's brief, an accident that occurred with a commuter jet in Akron Fulton Airport where nine people died on or about November 15 of last year. Your Honors, at the time I only had the preliminary report because that's all the National Transportation Safety Board had issued. I now have, it came out on Wednesday, and I don't think it's even, I don't think it's come out on Westlaw or Lexis yet, the actual final report from the National Transportation Safety Board. I have, I've given counsel a copy of it. I have four copies here. I filed it with the clerk's office with a request to take judicial notice. I don't know if I give it to you now, if I may. Would you mind saying what the issue is that you're addressing? Yes. The issue is this. The question of whether or not the judge should have allowed this to go to a jury is critical. What we're dealing with here is an airline, a commuter airline, where mistakes, if they're made, have fatal consequences. When you say let this go to the jury, in regard to what concern? Yes. The question boils down to a very narrow one of whether or not the plaintiff below made a case, an arguable case even, for oppositional activity, whether or not there was discriminatory conduct, specifically discriminatory conduct on the part of the employer. There was some notice that was made. It was rather skimpy, and I've cited that in the brief. But the question involving whether or not the actions of the co-workers, and that is the co-pilots, whether those actions ever could arise to the level of a discriminatory practice by the employer. And I've cited the case of Osage v. Strongsville and Keel v. University Hospitals on that point. That is the very narrow question here. I raised it at directed verdict, at the close of the case in chief. I also raised it again at the close of the entire case, and of course I repeated it again on our renewed motion for judgment as a matter of law. Essentially, to the nub, what was proven at trial, and all that was proven at trial, was that co-workers, and that definition was given to us by the United States Supreme Court in Vance v. Ball State University, the decision that came out right before our trial, they had nothing to do with hiring, firing, giving her any kind of advancement or any kind of raises. The Supreme Court and Ohio courts, and I've cited that, that's the Osage decision, Osage v. Strongsville, ruled that that sort of activity by co-workers is not discrimination that could be imputed to the employer, very simply. And there's a reason for that. The reason for that is, you know, we start with basic concept. I'm struggling with that argument in light of Sixth Circuit precedent that makes clear that an employer can be held liable for conduct of co-workers, or the employer knew or should have known of the conduct, but failed to stop it. I'm not sure, Your Honor, whether you're citing to a seventh, there's a little bit of a difference here. Gallagher, Sixth Circuit, 2009. First of all, Your Honors, I would say that that has been, it may have been impliedly overruled by the Vance v. Ball decision. The Supreme Court said very clearly that it can't be imputed. There are circumstances. The question is not imputation of their actions. The question is whether the employer knew that conduct was going on and failed to stop it. Okay. And I believe what the court then refers to, by the way, that was not part of the jury instructions, but be that as it may, the question at that point in time then turns on whether there was negligence and whether or not appropriate actions were taken. We're under a retaliatory charge. Yes. And so if the question seems to me under Sixth Circuit clear precedent is knowledge. And Mr. Gordon testified that he was aware of these complaints. I don't believe it was Mr. Gordon. I think you're thinking of Mr. Parsons. But at any event. Well, no, you're correct. It was both. I think Gordon and Parsons both indicated there was awareness of some of the complaints because the termination even included a reference to e-mails. Yeah, inappropriate. Inappropriate e-mails. I'm just struggling with your argument when the question feels to me that you are focusing on an issue that is not the gravamen of a retaliatory claim. Because the gravamen of this claim is did the people who took the action have knowledge or should they have had knowledge of the alleged harassment? I disagree. Oh, you disagree with the law? No, I disagree that that is the interpretation of the law, Your Honor. Well, you know, just to follow up on what Judge Strange is saying here, this is not a respondeat superior situation. This determination was effectuated by the chief executive officer who purportedly had all the information. At least there was testimony that Mr. Parsons had provided to him regarding the behavior of the employees. But we're not trying to impute the behavior of the employees to the person who allegedly perpetrated the retaliation. And since the retaliation was effectuated by the chief executive officer, we don't have to get into is the company going to be responsible for what some low-level employee did in terms of discriminatory behavior. That really isn't all that pertinent here. That's exactly, first of all, that's exactly what Vance v. Ball State University said. It was directly on that point. And it was about imputation. And it was about retaliation. It didn't go into a lot of explanation. It just said that the two issues before the court had to do with a claim for retaliation and also a claim for one of the claims that was dismissed in this case for harassing workplace. But it was on the issue. One of the issues was on retaliation. And it did talk about imputation, Your Honor. And I'm sorry. I'm finished. Do you want me to finish my answer? You can finish your answer if you like. Okay. Yes, Your Honor. It actually went into a great deal of detail on the question of imputation and whether or not, under certain circumstances, I believe it described as negligence. But I believe that had to do with a hostile work environment claim. You could show that the negligence… But we don't have a hostile work environment. We don't have a hostile work environment claim. So the only issue is whether there was reasonable knowledge of the alleged harassment. I disagree, Your Honor. The question here is whether or not that conduct by those co-workers can be imputed. I also cited an Ohio case that was cited by the Northern District of Ohio. That's the OSEI's decision where it said that co-workers' conduct cannot be imputed. And there they were talking about some really vile kinds of things about African-Americans that were being said by co-workers, cops, in the city of Strongsville. And they said they're co-workers. That's not retaliation under the Ohio statute 41-12. And that's all that was involved here. Would you like to take some of your rebuttal time and continue your argument? Or do you want to save your rebuttal? I'd like to save my rebuttal, Your Honor. All right. Thank you very much. May it please the Court. Don Leroy on behalf of Ms. Braun. I would agree that we don't need to worry about imputation. I think that Judge Leroy's opinion reflects that Parsons was the supervisor. He was aware of many of the complaints. He participated in a meeting prior to the termination. And so I don't think we have to get there. The question of whether or not the trial court should have granted the judgment is a matter of law, Rule 50. Of course, we have to take the evidence viewed in the light most favorable to the plaintiff. And we have to give her, the non-moving party, all reasonable inferences. I think Judge Leroy did that in her analysis. She said that her testimony was replete with instances where she was subjected to sexually offensive language and gender-based harassment and discrimination. This evidence, if believed, would be sufficient to support a determination by the jury that she reasonably, in good faith, believed she was engaging in protected activity when she complained to Parsons. Under the oppositional clause of 41-1202, an oppositional clause violation can be found whether or not the challenge practice is ultimately found to be unlawful. So as long as she reasonably believed that she was engaging in protected activity in making the complaints, I don't think we have to get to whether or not the activity itself amounted to gender discrimination. And that's Johnson v. University of Cincinnati. Regarding the issue of the appeal regarding the remittiture of punitive damages, I think Ohio Revised Code 41-1299 permits an award, it's clear under the Waddle case, permits an award of punitive damages and discrimination claim. And again, quoting from Waddle, the jury is given wide discretion in determining whether punitive damages are justified and in assessing the amount of such damages based upon its collective judgment as to the punitive and deterrent effect that such an award would have. I do not submit at all that an award of $100,000 when compensatory damages were calculated at 70 shocks anybody's conscience. I don't think that any of us are going to say the jury lost its way and awarded excessive punitive damages. It appears to me the award comports fairly nicely with the compensatory damage award. Touching, if I can, on two other issues regarding whether or not there's some error in the trial court awarding attorney's fees, I think there's two problems with that argument on behalf of the defendant. Number one, Johnson Conway, Ohio, was long permitted recovery of attorney fees even in the absence of statutory authorization where punitive damages are proper. We know that punitive damages are proper here under the Waddle case. So I think the attorney's fees stem from the punitive damages, the punitive damages awarded by the jury. Perhaps even more important, I think that issue was waived by defense counsel at the sidebar when the jury sent out questions regarding damages. And I don't need to quote from that, but the judge went through our analysis that if the jury comes back with punitives, then we all agree attorney's fees are on the table to be decided by the court three different times during that. Both parties agreed to submit the punitive damages charged to the jury, correct? Yes, correct, Judge. So I think there's two problems with that appeal. If I can take a few minutes to address the name change controversy under Rule 60, I think that Judge Leroy's exhaustive analysis of that is right on point, and that is that although the issue was raised in one sentence in the answer, it was never again raised until approximately two months after the jury verdict. It wasn't raised during trial. In fact, the motion for summary judgment filed by the defendant talks about Ultimate Jet Charters, Inc. The joint stipulated facts talks about Ultimate Jet Charters, Inc. The proposed jury instructions that were read to the jury also refer to Ultimate Jet Charters, Inc. Everybody at the trial acknowledged that they worked for Ultimate Jet Charters, and I think when Judge Loy looked at how that was presented all the way through the trial, her conclusion that the jury intended to hold plaintiff's former employer liable for retaliation regardless of the legal structure of that entity. So the fact that it was not Ultimate Jet Charters, Inc., but it was Ultimate Jet Charters, LLC, was not a significant problem. All the same people testified, the same attorneys were involved, the same ownership. So I don't think that issue certainly merits throwing out the jury verdict. There's a further reason why I think that issue could even be said to have been waived, and that is if the wrong party is named in litigation, you can resolve that well before trial. You can resolve it any time before the trial commences. You can bring it to the court's attention by a 12-B motion. You can bring it through a motion for summary judgment. And this case was extensively briefed. There were motions flying back and forth. I mean, we're into the thousands of pages, and the fact that the defendant didn't resolve that by way of any kind of pretrial motion, but failed to act and lay in wait and, as Judge Loy said, rolled the dice, and then when unhappy with the verdict from the jury, then decides to ask the court to decide that the wrong party was named. So I think they've waived that, or there should be at least a stop from arguing that at that late date. If I can take a second or two to talk about one other issue, if nobody on the panel has any questions at this point. I received what I suspect is to be offered as an exhibit or something. I don't know. I couldn't tell from opposing counsel's comments when he started. At 14 minutes till 9, something to do with an air collision in Akron apparently last November. Well, obviously. Is there something in the record below? No. No, not at all. It's something that amounts, in my opinion, to appeal by ambush to give any new exhibit to opposing counsel 14 minutes before the arguments do begin. I haven't even tried to open it. Well, we don't usually accept exhibits in any event. Thank you, Your Honor. But that exhibit probably has to do with what I expect the court may hear, that Ms. Braun was an unsafe pilot, and there was evidence all through the trial that that was their approach, that they had good reasons to fire her because she's an unsafe pilot. At the end of the day, or at the end of the five days of trial, the jury heard all of that evidence, and they weighed everything they heard from 14 different witnesses against her single testimony, and the jury, who's the trier of fact, who weighs credibility, who weighs all of that evidence, decided that that evidence didn't pass muster. They didn't find there was a safety violation. What they found was that the argument that there were safety violations was a pretext, and it was a pretextual reason for Ultimate Jet Charters to fire her, and had they given any credibility to it at all, we would have had a different result, but they didn't. They heard it over the period of multiple witnesses, and they obviously gave it absolutely no weight, and I think the defense argument about the safety violations at this point is that they don't like what the jury decided. They don't like that the jury didn't believe their witnesses. They don't like that the jury thought they had a good reason to terminate, but that was a credibility issue. That's the weight of the evidence that the jury decided, and at this point in time, I don't think that those arguments hold muster because the jury made that decision, and that's why we have trier's effect. If there are no questions from any members of the panel, I would just conclude by saying this was an aggressively contested matter. I wasn't involved, but you can look at the pleadings. You can look at the transcript. It was fought aggressively by both sides before, during, and for a year and a half or two years after the trial. The jury heard both sides over a five-day period, and the jury decided who should be believed and what evidence was important. The jury decided to believe Ms. Braun's testimony, even though she was outnumbered 14 to 1. We would ask the court to affirm both the jury verdict and the well-reasoned opinions that were rendered by Judge Loy throughout the course of this matter. Thank you. Thank you. Any rebuttal? Yes, thank you. Yes. We told them. This is a converted, it's a conversion under the statute. What does that mean when it says conversion? The problem is not the one reference in the answer to has been converted. The problem here is the remaining trial of the case in which the entity against whom the judgment was actually taken was named and represented in the trial, and there was never an argument raised that this is not the correct party by the defendants, nor was it further discussed in any way that would deny the applicability of a judgment against the party that was before the court. Under the Second Circuit case, all of those led that court and the court below to believe that it should just be corrected because the parties together had litigated against the entity that was now liable. The unfortunate thing is I've checked all over the country, and there is no authority on the conversion statutes. What the conversion statute itself says is that once the converted, and I get these wrong all the time, the old entity, once that transaction completes, the old entity disappears. It's dissolved. It doesn't exist anymore. What happens if you then litigate on behalf of the old entity without any expression that the entity is dissolved? Well, I suppose, but I did say that it had been converted. No, but then you litigated against it, allowing its name to be used before the court, allowing a judgment to be taken against it without any statement to the court. on the basis of the fact that a claim couldn't be made against the entity that had been converted. Your Honor, the only time I would do that is if they had named the new entity and the new entity hadn't been the appropriate one. In other words, as an attorney, I'm looking for liability on behalf of my client. If they had named the new party and it was, in fact, the old party, I would have brought the motion to dismiss. Well, I have to say that your brother counsel's observation that you, quote, lay in wait, unquote, seems to fit this. At some point, it was ethically, if not legally, on you to speak up and say you've got the wrong entity here. One thing I think needs to be borne in mind about that. First of all, I believe it's jurisdictional. The proper party wasn't served, and we told them. Secondly, I believe it's incumbent upon the plaintiff, once he knows that, to correct the record. And I said it at the very beginning. Secondly, this is not a situation where you have a successor entity. These people, as we put on evidence... How does that fit with your duty of candor to the court? I believe we lived up to our duty of candor in terms of our answer. Our answer said what it was. It was converted entity. We said we actually admitted that we were there, but we did not. I've read the very short statement that was in there. And then you continued to litigate in the name of that entity, including its name in documents filed before the court, including references to it in agreed-upon jury instructions. I'm seeing a problem with a duty of candor here with the court, and seeing in those circumstances that it appears that you may have waived or have placed before the court testimony of people who sit in both entities and thereby eventually bound them to the judgment that was decided. The only person... Mr. Gordon? Mr. Gordon was... The head person who testified. That's true. And that's absolutely true, Your Honor. We're saying that it's jurisdictional, that's all. Your Honors, I have 20 seconds. The substance of the claim regarding whether or not we should have or whether or not there was sufficient evidence to go to the jury on the question of whether there was protected activity turns on that very essential element of whether or not the company did it. And in this case, the company did not engage in discrimination. Therefore, there was no protected activity. Thank you very much. Thank you very much. The case is submitted. There being no further cases for argument, we may adjourn court.